**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

                                                  Case No. 07-20309

**v.**

                                                  Hon. Victoria A. Roberts

**D-2    RAMON SORIA,**

    **Defendant.**

_____/

**ORDER**

**I.    INTRODUCTION**

This matter is before the Court for Sentencing. Defendant filed his Sentencing Memorandum on July 1, 2008. He asks the Court to depart from the mandatory minimum sentence pursuant to provisions of the "safety valve," 18 U.S.C. §3553(f) and §5C1.2. The Government filed its Sentencing Memorandum on September 12, 2008 and opposes application of the safety valve. The Court conducted an evidentiary hearing on September 22, 2008 to determine Defendant's eligibility for the safety valve. DEA agent Luigi Milani was the sole witness at that hearing.

**II.    BACKGROUND**

Defendant was charged along with ten co-defendants with: Count I - Conspiracy to Possess with Intent to Distribute and to Distribute Marijuana, in violation of 21 U.S.C. §841(a)(1) and 846, and Count II - Possession with Intent to Distribute Marijuana, and Aiding and Abetting, in violation of 21 U.S.C. §841(a)(1) and 18 U.S.C. §2. Defendant

1

pled guilty to Conspiracy to Possess with Intent to Distribute and to Distribute Marijuana pursuant to a Rule 11 Plea Agreement. The Government dismissed Count II.

Defendant is held accountable for 1,051 kilograms (2,317 pounds) of marijuana. Defendant also has pending state charges for Possession of Marijuana in Rio Grande City, Texas. There it is alleged the total weight of the confiscated marijuana was 1,531.50 pounds. Trial in the state matter has been postponed until after this sentencing.

On June 2, 2008, the Court sentenced co-defendant Juan Herrera to 41 months imprisonment and 36 months supervised release. Herrera's Rule 11 set forth a sentencing range of 51 - 63 months; he received a three-level reduction for being a minor participant and a two-level reduction under U.S.S.G. §5C1.2, the "safety valve."

On June 4, 2008, the Court sentenced co-defendant Alfonso Casteneda to 41 months imprisonment and 5 years supervised release. Casteneda's Rule 11 set forth a sentencing range of 57 - 71 months. He received a two-level reduction for being a minor participant. The Court departed from the 10-year statutory mandatory minimum based on a 5K1.1 Motion from the Government due to his substantial assistance.

Co-defendant Nelson Cruz-Gonzalez was sentenced on September 4, 2008 to 60 months imprisonment and 3 years supervised release. Cruz-Gonzalez' sentencing range was 70 - 87 months and he had a Criminal History Level of I. In his Rule 11, he received a two-level reduction under U.S.S.G. §5C1.2, the "safety valve."

Co-defendant Clifford Roberson was sentenced on September 10, 2008 to 120 months imprisonment and 5 years supervised release. Roberson's sentencing range was 120 - 135 months. He had a Criminal History Level of III, and was ineligible for the

2

safety valve.

Three co-defendants, Costica Bonas, Joe Nemes and David Carter, were convicted by a jury and await sentencing.

One co-defendant, Michael Hadden, was acquitted.

Two co-defendants, Lenardo Sain and Cordell Sain, await trial.

The probation department calculates an initial base offense level of 32 under §2D1.1(a)(3)(c)(4) for a total of between 1,000 but less than 3,000 kilograms of marijuana. After a three-point reduction under §3E1.1(a) and (b) for accepting responsibility for his actions and providing information to the government concerning his involvement in the offense, Defendant's offense level is 29. With no criminal history points and a Criminal History Category of I, Defendant's guideline range is 87-108 months. Defendant's offense imposes a statutory minimum of 120 months. The Probation Department calculates a range of 120 months, based upon the statutory minimum. The parties agreed on a 120-month sentence in the Rule 11.

Although not a part of the Rule 11 agreement, Defendant contends he meets the requirements of 18 U.S.C. §3553(f)(1)-(5), and seeks "safety valve" relief pursuant to U.S.S.G. §5C1.2. He says he met with government representatives on at least two occasions to provide information. Defendant argues that if the Court finds him eligible for the "safety valve," he would be entitled to an additional two-level reduction, placing him at a total offense level of 27, with a guidelines range of 70 - 87 months. The safety valve would permit the Court to impose a sentence below the mandatory 120-month minimum. Defendant argues that such a sentence is necessary to avoid an unwarranted sentence disparity with his similarly situated co-defendants.

3

The Government objects to Defendant's motion for relief under the safety valve. The Government says the Court should deny the safety valve as a matter of contract, since Defendant agreed to the mandatory minimum in his Rule 11. The Government also says the Court should deny the safety valve because Defendant was a leader and did not provide truthful information.

IV. CASE LAW AND ANALYSIS

A. Case Law

The Court must be sure that the sentence imposed is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). Pre-*Booker*, the Sentencing Guidelines limited the factors a district court could consider in fashioning an appropriate sentence, and mandated the extent to which a factor had to be present to warrant a departure from the Guidelines range. *Booker,* 543 U.S. 220; *see United States v. Crouse,* 145 F.3d 786, 789-790 (6th Cir. 1998). *Booker*, however, rendered the Guidelines advisory. Now, sentencing courts must consider the applicable Guidelines range and the additional statutory concerns set forth in 18 U.S.C. § 3553(a). *Booker,* 543 U.S. at 245-246. After considering these factors, the Court must impose a sentence that takes into account the statutory purposes in § 3553(a)(2). *Id.* These § 3553(a) statutory considerations and subsection (2) purposes include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence . . . to reflect the seriousness of the offense, to promote respect for the law . . . to provide just punishment, to deter similar criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with training, medical care, or other treatment;
> (3) the kinds of sentences available;
> (4) the applicable advisory Guidelines range;
> (5) relevant policy statements by the Sentencing Commission;

4

(6) the need to avoid unwarranted sentenc[ing] disparities; and
(7) the need to provide restitution to . . . victims.

*United States v. Cousins*, 469 F.3d 572, 576 (6th Cir. 2006) (emphasis added) (quoting 18 U.S.C. § 3553(a)) (internal quotations omitted)).

In the recent decision of *Gall v. United States*, the Supreme Court again clarified the appropriate approach to the review of district court sentences. *Gall v. United States*, 128 S. Ct. 586 (2007). District court sentences must be reasonable, and are subjected to "reasonableness' review" by the courts of appeals. *Id.* at 594. This review applies "the familiar abuse-of-discretion standard of review." *Id; see also United States v. Vonner*, 516 F.3d 382, 385-386 (6th Cir. 2008) (holding that district courts must ask whether the defendant has any objections to the sentence to ensure abuse-of discretion review).

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Id.* at 596-597 (citing *Rita v. United States*, 127 S. Ct. 2456, 2480 (2007)). "[T]he Guidelines should be the starting point and the initial benchmark." *Id.* at 596. "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. *Id.* However, "[i]n so doing, he may not presume that the Guidelines range is reasonable." *Id.* "The Guidelines are not the only consideration . . . ." *Id.* (citing *Rita*, 127 S. Ct. at 2480). "He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently

5

compelling to support the degree of the variance." *Id.* "[A] major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 128 S. Ct. at 596-597.

"When a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *United States v. Lalonde*, 509 F.3d 750, 770 (6th Cir. 2007) (quoting *United States v. Jones*, 489 F.3d 243, 252 (6th Cir. 2007)). In addition, after consideration of these arguments, "the district judge cannot simply rely upon the advisory Guidelines range, but rather 'must make an individualized assessment based on the facts presented.'" *Id.* (quoting *Gall*, 128 S. Ct. at 596-597).

The rule is well established that "the district court may consider hearsay evidence in determining sentence, but the accused must be given an opportunity to refute it, and the evidence must bear some minimal indicia of reliability in respect of defendant's right to due process." *United States v Robinson*, 898 F.2d 1111, 1115 (6th Cir. 1990). "A judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *Roberts v. United States*, 445 U.S. 552, 556, 63 L. Ed. 2d 622, 100 S. Ct. 1358 (1980) (quoting *United States v. Tucker*, 404 U.S. 443, 446, 30 L. Ed. 2d 592, 92 S. Ct. 589 (1972)). *See also* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of

6

imposing an appropriate sentence.").

B.     Safety Valve, U.S.S.G. §5C1.2

1.     The Rule 11 Plea Agreement

Defendant says he is entitled to a safety valve reduction based upon his cooperation with authorities and his acceptance of responsibility. The Government says that Defendant's request is in violation of the express terms of the Rule 11 Plea Agreement, which did not include a safety valve reduction. The Rule 11 Agreement says, in pertinent part:

> There are no sentencing guideline disputes. Except as provided below, defendant's guideline range is 120 months, as set forth on the attached worksheets   .        .        .
>
> Neither party may take a position concerning the applicable guidelines that is different than any position of that party as reflected in the attached worksheets, except as necessary to the Court's determination regarding subsections a) and b) above.

Federal Rule of Criminal Procedure 11 regulates plea agreements, and establishes that in return for a guilty plea, a government attorney may agree to dismiss other charges, make sentencing recommendations, or "agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply." Fed. R. Crim. P. 11(c)(1)(C). The rule further provides that "such a recommendation or request binds the court once the court accepts the plea agreement."

*Id.*

Under Rule 11, the court retains absolute discretion whether to accept a plea agreement, and the agreed sentence obviously plays a role in the court's consideration.

7

See Fed. R. Crim. P. 11 (1999) Advisory Committee's Note. A sentence imposed under a Rule 11(c)(1)(C) plea arises directly from the agreement itself, not from the Guidelines, even though the court can and should consult the Guidelines in deciding whether to accept the plea agreement. *U.S. v Heard*, 359 F.3d 544, 548-549 (D.C. Cir. 2004). If the district court does not accept the sentencing agreement in its entirety, the defendant must be allowed to withdraw his or her guilty plea; the court does not have the power to retain the plea and discard the agreed-upon sentence. *U.S. v Cieslowski*, 410 F.3d 353, 363 (3rd Cir. 2005); See also Fed. R. Crim. P. 11(c)(5).

In *United States v. Ashe*, 47 F.3d 770, 775-76 (6th Cir. 1995), the court stated that any right, even a constitutional right, may be surrendered in a plea agreement if that waiver was made knowingly and voluntarily." In *United States v. Allison*, 59 F.3d 43, 46 (6th Cir. 1995), the court held that the defendant waived her appeal of a sentence enhancement when the valid plea agreement included a stipulation to the enhancement and an agreement not to challenge any stipulated factor.

Similarly here, the Court finds that Defendant waived his right to challenge the applicable guidelines since the plea agreement included a stipulated guideline range and sentence.

### 2. Eligibility for Safety Valve

Even if Defendant had not agreed to waive the applicable guidelines, the Court finds that he is ineligible for the safety valve. U.S.S.G. §5C1.2, the "safety valve" provision requires the court to impose sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence upon finding the defendant to have met the criteria set out in 18 U.S.C. § 3553(f)(1)-(5). Those criteria

8

include:

> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
>
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;
>
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and
>
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement. 18 U.S.C.S. § 3553(f).

In dealing with claims for relief from mandatory minimum sentences, the courts must always be aware of the purpose of Congress in creating the safety valve. "Specifically, the Act permit [sic] a narrow class of defendants, those who are *the least culpable participants* in such [drug trafficking] offenses, to receive strictly regulated reductions in prison sentences for mitigating factors currently recognized under federal sentencing guidelines." H.R. Rep. No. 103-460, 103d Cong., 2d Sess., reprinted in 1994 WL 107571 (Leg. Hist.), at 4 (1994) (emphasis added).

Whether a defendant meets these criteria is a factual finding of the district court, reviewed only for clear error. The safety valve departure is available only when, among other things, the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the U.S. Sentencing Guidelines Manual § 5C1.2(4) ("Manual").

9

A defendant seeking a safety valve reduction under § 3553(f) has the burden to prove that he has met the statutory requirements. *United States v. Adu*, 82 F.3d 119, 123-24 (6th Cir. 1996). The burden of proving substantial assistance under § 3553(f) can be met only by an "affirmative act by the defendant truthfully disclosing all the information he possesses that concerns his offense or related offenses." *Id*. The Sixth Circuit stated that the safety valve provision imposes "an affirmative obligation on the defendant to 'volunteer any information aside from the conduct comprising the elements of the [charged] offense.'" *U.S. v Dell*, 247 F.3d 655, 675 (6th Cir. 2001)(quoting *U.S. v Arrington*, 73 F.3d 144, 149 (7th Cir.1996)). Unlike other reduction provisions such as U.S.S.G. §3E.1.1, a defendant seeking a reduction under the safety provision must "'reveal a broader scope of information about the relevant criminal conduct to the authorities.'" Id. (quoting *U.S. v Sabir*, 117 F.3d 750, 753 (3d Cir.1997)). The burden is on the defendant to establish that each of the criteria has been met. *Id*. The standard of proof at sentencing hearings is by a preponderance of the evidence, even post-*Booker*. *United States v Cook*, 453 F.3d 775,777 (6th Cir. 2006).

Defendant easily meets the first three criteria. He has no prior convictions and one criminal history point. There is no evidence he committed a violent act, threatened violence or possessed a weapon during the offense, and the offense did not result in death or serious injury to anyone. The last two criteria are disputed and are discussed more fully below.

### a. Leader, Organizer, Manager or Supervisor Enhancement, U.S.S.G. § 3B1.1

With respect to the fourth criteria - being an organizer, leader, supervisor or

manager – the Government says Defendant enjoyed a managerial or supervisory role with regards to others in the charged conspiracy.

The Commentary to the Sentencing Guidelines states that to determine whether a defendant played a leadership role, the court should consider factors such as "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1, comment. (n.4).

In drug cases, "control" over others is a key factor in determining whether an adjustment under § 3B1.1(c) is proper. *United States v. Harriott,* 976 F.2d 198, 202 (4th Cir. 1992). Examples of control include instructing couriers, making travel arrangements or otherwise directing another person's activities. *Id*.

The advisory Guidelines also recognize that relative degrees of responsibility may exist within the same criminal activity. As in a lawful enterprise, an illegal enterprise may contain multiple levels of management. U.S.S.G. § 3B1.1 Application Note 4.

To be subject to the § 3B1.1 enhancement, the defendant must have played a leadership role in an organization with at least one other participant, and that participant must be someone criminally responsible for commission of the offense. U.S.S.G. § 3B1.1, comment. (n.2); *United States v. Gort-DiDonato*, 108 F.3d 318 (6th Cir. 1997). The Application Notes to the Manual § 5C1.2(4) describe an "organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing

11

guidelines," as a defendant who receives an adjustment for an aggravating role under U.S.S.G. §3B1.1(b) (Aggravating Role).

At the evidentiary hearing, Agent Milani testified that he met with Defendant on two separate occasions for *Kastigar* debriefings. Regarding the June 2007 incident, Defendant told Milani that he was sent from Texas to Detroit by a person named "Mongo" (aka Mike) to make sure the marijuana was delivered. He traveled with Herrera. Defendant said he first flew from Texas to Tennessee where he waited for a short time. He then came to Chicago, renting a car. He waited for phone calls between those trips to tell him what to do next. He admitted buying airline tickets for these trips. He said he went to Home Depot on the day of the delivery to buy tools to open the secret department. After the delivery, Defendant was to call Mongo to let him know the delivery was completed; he had previously met Mongo at a party in Mexico and given Mongo his "direct connect" number. Mongo was to pay him $3,000. Defendant also said he knew the quantity of the drugs to be delivered. However, Defendant said he did not know the name of the source of the supply or the phone numbers of any higher up individuals.

Agent Milani did not believe Defendant's testimony was truthful based on contradictory information he received from other co-defendants or informants. Milani said that information led him to believe that Defendant enjoyed a managerial or supervisory role with respect to Herrera and Casteneda.

Agent Milani testified that he interviewed co-defendant Casteneda, who also met with the Government to provide information in an attempt to lower his sentence. Casteneda told Milani that he was a passenger in a vehicle driven by Rodriguez (first

12

name unknown). Rodriguez was on the phone discussing matters of the day with a person Casteneda called the "chubby one," who Milani believed to be Defendant. Casteneda also told Milani he believed that Defendant knew where the secret compartment was located in the semi truck.

Milani said he met with co-defendant Herrera, who also provided information to the Government in an attempt to obtain a lower sentence. Herrera said Defendant asked him to help in the delivery of the marijuana and Defendant was to pay him $2,000. Herrera said that Defendant did all the preliminary planning, such as purchasing airline tickets, paying for motels, renting a vehicle, and talking on "direct connect" with the person believed to be the source who set up the deal.

On cross examination, Milani admitted that the information Defendant provided was truthful and accurate. However, Milani believed Defendant knew more about his involvement than he revealed, particularly with respect other persons. Milani said Defendant only confirmed facts of which Milani was already aware, and only information concerning subordinates. Milani agreed that other than the hotel and rental car bills, there was no tangible evidence such as audiotape, videotape, ledgers or other documents that would indicate Defendant coordinated the activity. However, Milani said an unidentified person told him that Defendant was paid $1,000.00 by a black male on the morning of the delivery; none of the other involved individuals was paid.

The Court finds that the information provided by Casteneda and the unidentified person does not have an indicia of reliability since it is based on hearsay provided by other unknown persons. However, the Court finds that Herrera's information is sufficiently credible on this issue. Although Herrera's information was provided for the

purpose of garnering favor with the Government for his own sentence, it corroborates information provided by Defendant. The information makes clear that Defendant acted in a managerial role with respect to Herrera, since Defendant recruited him, offered to pay him $2,000 for his help, and paid for all of his transportation expenses.

Moreover, Defendant was entrusted with the task of delivery of the marijuana from Texas to Michigan, which included his hiring by a higher-up, "Mongo". This evidences a close relationship between the two. Defendant was also entrusted with the job of insulating "Mongo" from the authorities and protecting "Mongo's" identity from both law enforcement and other members of the conspiracy who might implicate "Mongo." Defendant has maintained that trust; he has revealed no legal name, phone number, or other means of contact with "Mongo." Therefore, the Court finds that Defendant was a manager or supervisor.

### b. Timely provision of truthful information

With respect to the fifth criterion – the provision of timely, complete, truthful information -- Defendant says he met with the Government on two occasions to provide information. The pertinent question is whether the information he provided was truthful and complete.

The combined language of §5C1.2 and the application note is extremely broad: it requires disclosure of all information regarding "the offense of conviction and all relevant conduct." See U.S.S.G. §5C1.2(5); §5C1.2, comment. (n.3). When the ability of a defendant to commit a drug offense depends upon the active participation of other people, information about such participation constitutes information about both "the offense of conviction" and "relevant conduct." *United States v Maduka*, 104 F.3d 891 (6th

14

Cir. 1997). A defendant is obliged to provide information relevant to his own chain of distribution, i.e., from whom he bought and to whom he sold, if he wishes to avail himself of the benefits of §3553(f). *United States v Buffington*, 879 F.Supp. 1220, 1222-23 (N.D. Ga 1995). Every court which has considered this issue has held the same. See *United States v Arrington*, 73 F.3d 144, 148 (7th Cir. 1996); *United States v Ivester*, 75 F.3d 182, 184 (4th Cir. 1996); *United States v Romo*, 81 F.3d 84, 85 (8th Cir. 1996). However, there must be some connection between the crime of which the defendant is convicted and the crimes about which the government is seeking information. *Buffington* at 1223.

In *U.S. v Rucker*, 133 Fed Appx. 187 (6th Cir. 2005), the defendant appealed his mandatory minimum sentence and denial of his departure motions. The defendant said the lower court erred in denying a safety valve departure. The appeals court found the defendant was not entitled to a safety valve reduction because he did not meet his burden to prove the fifth criterion of the safety valve. The appeals court noted that agents testified at the defendant's sentencing hearing that he was directly or indirectly responsible for transporting a greater quantity of drugs than he had previously admitted. That evidence was sufficient to make him ineligible for safety valve relief.

Similarly, in *U.S. v Turpin*, 2004 U.S. App LEXIS 15624 (4th Cir. 2004), the appeals court affirmed the defendant's sentence for conspiracy to possess with intent to distribute and to distribute cocaine and marijuana. That defendant argued that the lower court erred by failing to reduce his sentence pursuant to the safety valve provision of the sentencing guidelines. The appeals court ruled the defendant did not truthfully disclose all that he knew about the conspiracy, and hence did not qualify for a sentence below

the mandatory minimum.

Here, Agent Milani testified that he did not believe Defendant's testimony was truthful based on contradictory information he received from Sargent Ricardo Rivera of the Texas Department of Public Safety. Rivera testified at the trial of the co-defendants regarding his surveillance activities in the Rio Grande Valley of Texas. Rivera testified that the Rio Grande Valley is a staging area for transport of drugs to northern cities. He said that on January 29, 2007, he established surveillance in Edinburgh, Texas at the "Flying J" truck stop. He identified a tractor-trailer with which he had had previous run-ins. No arrests or seizures were made that day. The following day, Rivera continued surveillance at the same location. He followed the same tractor to a mechanic shop. A green pick-up truck driven by Defendant also arrived at the mechanic shop. On January 31, 2007, Officer Rivera continued his surveillance. The green pick-up truck left the mechanic shop, followed by the tractor-trailer, and headed to a residence. Both vehicles later left the residence, but were stopped by other uniformed officers. Based upon his training and experience, Officer Rivera opined that Defendant was conducting counter surveillance. A search of the 53-foot trailer revealed a secret compartment which contained 80 bundles of marijuana. Defendant was charged with possession of marijuana in state court, but he jumped bail and never returned to court to face the charges.

On the other hand, Defendant minimized his involvement in this incident; he told Milani he was only supposed to observe a semi-trailer pass by a certain highway, then make a phone call to a person after he had seen that occur. Defendant said he was to be paid $300.00 for his involvement.

Based upon Sargent Rivera's observations, it is clear that Defendant was more involved than he admitted. The Court should find that Defendant did not truthfully and completely disclose all information he had about this conspiracy to the Government.

Defendant's status as a manager or supervisor, as well as his failure to provide truthful and complete information, make him ineligible for the safety valve.

### 3. Advisory Guidelines

The Court's conclusion regarding Defendant's managerial role affects the guidelines calculation. With an initial base offense level of 32 under §2D1.1(a)(3)(c)(4) for a total of between 1,000 but less than 3,000 kilograms of marijuana and a three-point enhancement under §3B1.1 for being a manager or supervisor, Defendant has an adjusted offense level of 35. After a three-point reduction under §3E1.1(a) and (b) for accepting responsibility for his actions and providing information to the government concerning his involvement in the offense, Defendant's offense level is 32. With no criminal history points and a Criminal History Category of I, Defendant's guideline range is now 121 - 151 months.

### E. 18 U.S.C. §3553(a) Factors

### 1. Overview

The Offense Conduct is fully described in the PSIR. Neither the Government, nor Defendant objected to the PSIR. Working on a tip from a confidential informant, agents from the FBI, DEA and Michigan State Police conducted surveillance on Defendant and several co-defendants. Agents observed Defendant and some co-defendants drive to a warehouse where they were met by a semi-tractor trailer.

17

Defendant and co-defendants offloaded 200 bales of marijuana from a secret compartment in the tractor trailer and re-loaded it into a waiting truck. Defendant is held accountable for 1,051 kilograms (2,317 pounds) of marijuana.

Defendant's actions were significant. Defendant traveled from Texas to Michigan to conspire with 10 others in a major drug trafficking scheme in which agents recovered more than a ton of marijuana valued at $2,000,000.00. Defendant has been characterized by the Government as the "main marijuana connection between Texas and Michigan." PSIR, ¶ 21.

Among Defendant's positive attributes are: (1) he is a United States citizen; (2) he resides in Texas with his wife, two-year-old child, and extended family, and has strong family support; (3) he is employed in a family business as a landscaper; and (4) he has no prior criminal convictions. Among the negative attributes are: (1) Defendant has a ninth grade Mexican education and has not attained additional academic or vocation pursuits; (2) he speaks limited English; (3) he drinks alcohol on a regular basis and smokes marijuana; and (4) he committed this offense while he had a pending state charge for possession of marijuana less than 2,000 pounds, which suggests that this offense was not isolated. His positive attributes equal his negative attributes.

In light of the amount of marijuana and number of defendants involved, there is a strong need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to deter similar criminal conduct, and to protect the public from further crimes of the Defendant. In light of Defendant's educational level, health status and history of substance abuse, there is also a need to provide the Defendant with educational training, medical care, and substance abuse

treatment.

The Court finds that the parties' agreed-upon sentence is sufficient, but not greater than necessary to accomplish these goals.

### 2. Sentence Disparity, 18 U.S.C. §3553(a)(6)

Defendant argues that a sentence below the statutory minimum is necessary to avoid an unwarranted sentence disparity with his co-defendants. However, Defendant waived his right to challenge the applicable guideline range by agreeing to the statutory guideline range of 120 months in the plea agreement. Moreover, he is not similarly situated to his co-defendants since he was involved in two drug trafficking incidents in a five-month period.

## IV. CONCLUSION

The Court DENIES Defendant's request to apply the safety valve.

**IT IS ORDERED.**

                              **s/Victoria A. Roberts**
                              **Victoria A. Roberts**
                              **United States District Judge**

**Dated: October 10, 2008**

> **The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on October 10, 2008.**
>
> **s/Carol A. Pinegar**
> **Deputy Clerk**